IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBIN BEANS, ANGELA STOLDEN, SHERRIE BURRELL, EVELYN JONES-REED, MAKESHA LEE, SHELLEY HUNT and BRENDA MAZZAWI, | § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:20-cv-1451-L |
| AT&T SERVICES, INC. and SOUTHWESTERN BELL TELEPHONE, LP a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC a/k/a AT&T SOUTHWEST, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

The parties have filed cross-motions for summary judgment, which United States District Judge Sam A. Lindsay has referred to the undersigned United States Magistrate Judge for hearing, if necessary, and proposed findings and recommendations for disposition of the motions. *See* Dkt. Nos. 50, 62.

For the reasons explained below, the Court should deny Plaintiffs' motion for partial summary judgment [Dkt. No. 53] and grant Defendants' motion for summary judgment [Dkt. No. 45].

**Background**

I.    Undisputed Background Facts

Plaintiffs were former opt-in plaintiffs in a decertified Fair Labor Standards Act ("FLSA") collective action filed in the United States District Court for the Northern District of Texas. *See Mosley-Lovings v. AT&T Corp.*, No. 3:18-cv-01145-B (N.D. Tex.), decertified on Apr. 6, 2020. In the *Mosley-Lovings* suit, the collective plaintiffs alleged the same violations of the FLSA based on the same underlying factual basis and against the same Defendants as Plaintiffs assert in this action. The *Mosely-Lovings* parties later agreed to decertify the collective action and allow the opt-in plaintiffs to bring their own claims. *See Mosely-Lovings* at Dkt. No. 178.

Plaintiffs subsequently filed this action in this Court asserting Defendants Southwestern Bell Telephone L.P. and AT&T Services, Inc. (collectively "AT&T") violated the FLSA by failing to pay them for unreported overtime work.

Plaintiffs worked in AT&T's Dallas-Fort Worth ("DFW") call center until it closed in 2018. They worked as Revenue Management Representatives ("RMRs"). Their primary task was to take incoming calls from customers regarding billings and collections. During the relevant time period, AT&T required RMRs to self-report any time worked in excess of their assigned shift.

AT&T had two time-keeping policies that are relevant to this case: its trade-time policy and its exception timekeeping policy.

Under AT&T's trade-time policy, which is governed by a collective bargaining agreement ("CBA"), if an RMR worked longer than her scheduled shift by less than ten minutes on any given workday, that extra time "shall be 'traded out' on days

following, in the same week" and "not accounted for on work reports." The CBA refers to this as "trade time." For example, an employee who worked for nine minutes after her shift on a Monday would report that time and would be provided a schedule adjustment on the following workday to either arrive nine minutes late, have nine minutes added either before or after a break or lunch, or leave work early by nine minutes.

But, if an RMR worked ten minutes or more beyond her scheduled shift, the time was not treated as trade time. Instead, the CBA provided that an RMR would be paid at one and one-half times the individual's regular pay for overtime work beyond trade time. And under the CBA, if an RMR had fewer than ten minutes of additional work time on the last day of the week, or trade time not used during the designated week, or other overtime worked, AT&T would pay that employee for this time at the overtime rate.

AT&T's exception timekeeping policy required RMRs to self-report any trade time and overtime worked. RMRs were paid based on their scheduled shifts and were to report any time worked outside their scheduled shifts to receive trade time or appropriate overtime pay. And they were required to self-report any trade time or overtime worked while at AT&T's work facility prior to leaving for that shift. If an RMR failed to report trade time or overtime, this variance was lost and could not be accounted for through trade time or overtime pay.

At the same time, AT&T used three computer programs that Plaintiffs believe

are relevant to this case: the "IEX," "CIT," and "HVD" systems. IEX is a computer calendar program that schedules the work activities of AT&T's employees. CTI is a phone system that call center employees use to handle and track customer calls. HVD is a "hosted virtual desktop" system that captures all login and logout data on the computers AT&T call center employees used. The data in these programs track how long an employee was logged into to the computer or using a phone. In AT&T's DFW call center, a "Force Team" used this sign-in and computer-use data to monitor the RMRs' adherence to their assigned shift schedules, code variances, and adjust shift schedules when RMRs self-reported trade time. Plaintiffs believe the data contained in these programs put AT&T on notice that they were working overtime, and that the data from these programs show that they worked overtime for which they were uncompensated.

II.    <u>Plaintiffs' allegations</u>

Plaintiffs allege that they regularly worked past their scheduled 40-hour shifts because AT&T required RMRs to finish a service call that began during their shift and RMRs were not allowed to remove themselves from the call queue prior to the conclusion of their shift. Plaintiffs have limited their claims to post-shift time when they were caught on a call. *See* Dkt. No. 47-1 at 6-8 (Plaintiff's Second Amended Disclosures); *see also* Dkt. No. 82 at 1 (Plaintiffs' Reply Brief) ("At the heart of this matter is whether Defendants' were aware of work performed by Plaintiffs when they were caught on a call at the end of their call-center shifts when

those employees did not self-report this additional time.").

Plaintiffs further allege that they consistently worked more than 40 hours a week but that they either failed to report the trade time and overtime due to the time and inconvenience that this reporting required of them prior to leaving, or they were unable to report it during the assigned shift. And Plaintiffs allege the exception timekeeping policy inherently discouraged and precluded the reporting of trade time and overtime worked by requiring the RMRs to self-report this time before leaving because it was difficult and inconvenient.

Plaintiffs allege that A&T violated the FLSA by not paying them the appropriate overtime pay due them for this unreported trade time and overtime (collectively referred to as "Unreported Call Time"). Because all Unreported Call Time is clearly reflected in the CTI and HVD systems and the Force Team monitored these systems to ensure that Plaintiffs adhered to their scheduled work shifts, Plaintiffs contend that AT&T could have also utilized these systems to monitor and determine trade time and overtime worked, but not reported. Based on knowledge imputed by use of these computer systems regarding their hours worked and paid, Plaintiffs contend that AT&T had actual and constructive knowledge that Plaintiffs were not being paid for Unreported Call Time and should have paid them accordingly. Further, Plaintiffs contend that AT&T knew that they consistently worked beyond their scheduled shifts due to the nature of their work handling service calls in conjunction with AT&T's policies requiring RMRs to complete all

calls that proceed beyond the end of their shift and requiring RMRs to remain in the call queue until the end of their shift.

III.    The motions for summary judgment

Defendants filed a motion for summary judgment on Plaintiffs' FLSA overtime claim. *See* Dkt. No. 45. Plaintiffs filed a response, *see* Dkt. No. 72, and Defendants filed a reply, *see* Dkt. No. 80.

Plaintiffs filed a motion for partial summary judgment on AT&T's liability. *See* Dkt. No. 53. Defendants filed a response, *see* Dkt. No. 76, and Plaintiffs filed a reply, *see* Dkt. No. 82.

Defendants also filed objections to Plaintiffs' summary judgment evidence. *See* Dkt. No. 75. Plaintiffs filed a response, *see* Dkt. No. 84, and Defendants filed a reply, *see* Dkt. No. 87.

IV.    The parties' arguments

Plaintiffs contend that they are entitled to summary judgment because the undisputed facts show that AT&T had actual and constructive knowledge that they consistently worked Unreported Call Time, and thus, the FLSA required AT&T to pay them at the overtime rate for this Unreported Call Time as a matter of law. Plaintiffs contend that the CTI, IEX, and HVD computer systems utilized to monitor their adherence to their work schedules and the time spent on customer service calls, in conjunction with the knowledge of what time they were actually paid for, imputed actual and constructive knowledge that they were not being properly compensated.

Plaintiffs contend that this knowledge triggered AT&T's responsibility to pay them for Unreported Call Time under the FLSA.

AT&T responds that it is entitled to summary judgment because, as a matter of law, Plaintiffs cannot establish it had actual or constructive knowledge that they were not reporting trade time and overtime, thereby triggering its responsibility to pay them overtime for this Unreported Call Time. Citing Fifth Circuit precedent, AT&T argues that the IEX, CTI, and HVD data are insufficient evidence, as a matter of law, to establish that it held actual or constructive knowledge that Plaintiffs consistently worked unreported and uncompensated overtime. AT&T contends that Plaintiffs cannot impute constructive or actual knowledge as a matter of law based on its computer records alone and fail to present any other competent summary judgment evidence to raise a genuine dispute of material fact on this issue.

The parties' primary dispute and arguments presented in the competing motions for summary judgment are whether AT&T had actual or constructive knowledge that Plaintiffs were working Unreported Call Time to trigger the FLSA requirement to pay Plaintiffs for this Unreported Call Time at the overtime rate.

V.    Related cases

The motions for summary judgment in this case are comparable to those filed in the *Mosley-Lovings* suit after decertification. In *Mosley-Lovings*, the remaining plaintiff and AT&T presented similar summary judgment arguments based on the same underlying factual basis as in this case. *See Mosley Lovings*, 2020 WL 6865785,

at *1-3. The *Mosley-Lovings* Court denied both motions for summary judgment on the issue of AT&T's liability, finding a genuine dispute of material fact existed whether AT&T had actual or constructive knowledge that Mosley-Lovings was working unpaid overtime. *See id.* at *3-4.

The motions for summary judgment in this case are almost identical to those filed by *Mosely-Loving* former opt-in plaintiffs who worked in AT&T's DFW call center until it closed in 2018, then relocated to AT&T's San Antonio call center. *See Harrington v. Southwestern Bell Tel., L.P.*, No. SA-20-CV-00770-JKP, 2021 WL 4441979, at *1 (W.D. Tex. Sept. 28, 2021). In *Harrington*, the Court denied the motions for summary judgment on the issue of AT&T's liability, finding a genuine dispute of material fact existed whether AT&T had actual or constructive knowledge that the plaintiffs in those cases working unpaid overtime. *See id.* at 7.

The undersigned finds these cases instructive on the relevant law and their reasoning persuasive, but there should be a different result in this case.

## Legal Standards

### I.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A

factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

-9-

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated

-10-

assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little,* 37 F.3d at 1075; *accord Pioneer Expl.,* 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

-12-

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"When parties file cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light

-13-

most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (footnote and internal quotation marks omitted).

II.    Fair Labor Standards Act

Under the FLSA an employer shall pay covered employees overtime compensation that is not less than one and one-half times that employee's regular rate for all hours worked over forty in one workweek. *See* 29 U.S.C. § 207(a)(1). To prove violation of the FLSA, an employee who seeks unpaid overtime must demonstrate: (1) there existed an employer-employee relationship during the relevant unpaid overtime periods; (2) the employee engaged in activities within the coverage of the FLSA; (3) the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *See Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *Mosley-Lovings v. AT&T Corp.*, 3:18-CV-01145-X, 2020 WL 6865785, at *2 (N.D. Tex. July 31, 2020). Once the employee establishes these elements, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence." *Johnson*, 758 F.3d at 630; *Mosley-Lovings v. AT&T Corp.*, 2020 WL 6865785, at *2.

## Analysis

The undersigned will discuss both motions for summary judgment together because they both seek summary judgment on the sole issue of whether AT&T

violated the FLSA.

I.  <u>Defendant Southwestern Bell should be dismissed as it was not an employer.</u>

Defendants seek summary judgment on Plaintiffs' FLSA claim against Defendant Southwestern Bell Telephone, L.P., also known as AT&T Communications of Texas, LLC, also known as AT&T Southwest ("Southwestern Bell"), asserting that this entity was never Plaintiffs' employer. Consequently, Plaintiffs cannot satisfy the first element of the FLSA claim asserted against Southwestern Bell. Plaintiffs do not respond to this summary judgment argument and otherwise admit in the summary judgment evidence that AT&T Services, Inc. was their only employer during the time relevant to this action.

The undersigned concludes the summary judgment evidence and Plaintiffs' admissions demonstrate Southwestern Bell was not any of Plaintiffs' employer. For this reason, the undersigned concludes Defendants' Motion for Summary Judgment as it pertains to Southwestern Bell should be granted.

II.  <u>The Court should grant AT&T's motion on the FLSA overtime claim.</u>

The parties do not contest the first or second elements of Plaintiffs' FLSA claim: whether Plaintiffs were employees of AT&T during the relevant time periods and whether Plaintiffs engaged in activities within the coverage of the FLSA. In their cross motions for summary judgment, the parties seek summary judgment on only the third element: whether AT&T violated the FLSA's overtime wage requirements. The parties do not discuss and leave open the fourth element: the

amount of any overtime compensation due. Thus, the parties' primary dispute and arguments presented in the competing motions for summary judgment are whether AT&T had actual or constructive knowledge that Plaintiffs were working Unreported Call Time to trigger the FLSA requirement that it pay Plaintiffs for this Unreported Call Time at the overtime rate.

The conflict between AT&T and Plaintiffs ultimately rests on their divergent readings of *Newton v. City of Henderson*, 47 F.3d 745, 748 (5th Cir. 1995). According to *Newton*, "[a]n employee cannot prevail on an FLSA claim if that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Id.* at 748 (cleaned up); *see also Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 (5th Cir. 2016) (quoting *Harvill v Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) and *Newton*, 47 F.3d at 748). The *Mosely-Lovings* Court called this the "no report, no recovery" rule. *Mosely-Lovings,* 2020 WL 6865785, at *4; *see also Harrington,* 2021 WL 4441979, at *5.

But, seemingly in conflict with the "no report, no recovery" rule, the *Newton* Court also said that "[a]n employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Newton*, 47 F.3d at 748 (cleaned up); *see also Fairchild,*

815 F.3d at 964. The *Mosely-Lovings* Court called this the "if you see it, you must pay it" rule. *Mosely-Lovings,* 2020 WL 6865785, at *4; *see also Harrington,* 2021 WL 4441979, at *5.

The *Newton* Court resolved the apparent conflict between the "no report, no recovery" and the "if you see it, you must pay it" rules acknowledging "an employee would not be estopped from claiming additional overtime if '[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate.'" *Newton*, 47 F.3d at 749 (quoting *Bumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972); *Mosley Lovings*, 2020 WL 6865785, at *4. The *Newton* Court held that indirect evidence of overtime in the possession of an employer does not qualify as actual or constructive knowledge to trigger the "if you see it, you must pay it" rule and that a plaintiff must present more than indirect evidence to overcome the initial "no report, no recovery" rule. *Newton*, 47 F.3d at 748-49; *Mosley Lovings*, 2020 WL 6865785, at *4. Consequently, the "no report, no recovery" rule applies unless the plaintiff can provide direct evidence that her employer had actual or constructive knowledge that she worked unpaid overtime. *See Newton*, 47 F.3d at 748-49; *Mosley Lovings*, 2020 WL 6865785, at *4. "If there is direct evidence of actual or constructive knowledge, then the 'if you see it you must pay it' rule is triggered." *Mosley Lovings*, 2020 WL 6865785, at *4; *see also Newton*,47 F.3d at 748-49.

Plaintiffs contend that the IEX, CTI, and HVD data imposed actual and

-17-

constructive knowledge on AT&T. With this computer data in its possession, Plaintiffs contend that AT&T knew or should have known they were working overtime, but not reporting it or being paid appropriately.

This argument is dispelled by *Fairchild* and *Newton*. In *Fairchild*, the Plaintiff argued that "computer usage reports, which allegedly show she was working after 'clocking out,' proves that [her employer] had constructive knowledge that she was working overtime." *Fairchild,* 815 F.3d at 965. As in *Newton*, the *Fairchild* Court found this argument "unavailing" and held that, although her employer "could have potentially discovered that she was working overtime based on the usage reports, 'the question here is whether [the employer] should have known.' " *Id.* (quoting *Newton*, 47 F.3d at 749). "[M]ere 'access' to this information is insufficient for imputing constructive knowledge" that an employee was working overtime to trigger the "if you see it you must pay it" obligation. *Fairchild*, 815 F.3d at 965; *Newton*, 47 F.3d at 749; *Mosley Lovings*, 2020 WL 6865785, at *3-*4.

Consequently, the computer data pertaining to the exact hours that Plaintiffs worked compared to what they were paid that was reflected in AT&T's CTI, IEX and HVD programs, alone, is insufficient as a matter of law to establish actual or constructive knowledge to trigger AT&T's obligation to pay Plaintiffs overtime. Plaintiffs must present more direct evidence to confirm that AT&T was actually or constructively aware that they were working uncompensated Unreported Call Time for which it should pay them at the overtime rate. *See Fairchild*, 815 F.3d at 965;

*Mosley Lovings*, 2020 WL 6865785, at *3.

In *Mosely-Lovings*, the Court based its denial of the summary judgment motions on direct evidence that is not present in this case. *See Mosely-Lovings*, 2020 WL 68665785, at *2, *4.

In *Harrington,* the plaintiffs presented summary judgment evidence consisting of the deposition testimony of Eric Staten, Associate Director of Credit and Collections in the San Antonio call center and Roel Quiroga, a senior manager of a Force Team, to demonstrate that AT&T had actual or constructive notice that the RMRs in the San Antonio call center were working call time after their shift ended but not being paid for that work.

> In his deposition, Eric Staten admitted a general awareness that RMRs worked overtime due to the nature of their job, and RMRs were "not perfect", or completely accurate, in reporting their Trade Time or overtime at the end of a shift. *ECF No. 76, Exh. F, p. 43:7-17; pp. 43:23-44:12; 50:3-24; 51:19-52:2*. Staten stated AT&T did not require or ensure RMRs accurately report Trade Time or overtime because RMRs were aware of AT&T's policy that it was their responsibility to report this overtime, and "we do highly discourage that for them not to report because we make it easy for them to report." *Id. at pp. 43:23-44:5; 49:13-50:24, 51:19-52:2*. Despite his general awareness that RMR's reporting of Trade Time and overtime may not be accurate, Staten stated he did not, on his own volition or at the direction of AT&T, conduct an audit to determine the accuracy of RMR timekeeping of any overtime. *Id. at pp. 43:7-44:12; 51:8-52:2*.

> Roel Quiroga also admitted to a general knowledge that RMRs were not perfect in reporting all Trade Time and overtime and for this reason the reported time could be inaccurate. *ECF No. 76, Quiroga Depo., Exh. L, pp. 57:12-58:10*. Further, a reasonable juror could infer from Quiroga's answers that he was aware RMRs consistently worked past the end of their shifts. *See id*. Despite his general awareness that RMR's reporting of Trade Time and overtime may not be accurate,

Quiroga stated he did not, on his own volition or at the direction of AT&T, conduct an audit to determine the accuracy of RMR timekeeping of any overtime. *Id. at pp. 54:8-55:3; 58:14-22.*

The *Harrington* Court concluded:

> With this summary judgment evidence, Plaintiffs provide what a reasonable juror could construe as direct evidence that AT&T had actual or constructive knowledge that RMRs worked Unreported Call Time that could trigger its obligation under the FLSA to investigate or pay appropriate overtime. With regard to both Plaintiffs' Motion for Summary Judgement and AT&T's Motion for Summary Judgement, this evidence sufficiently raises a genuine dispute of material fact as to whether AT&T was on notice that Plaintiffs were working Unreported Call Time that must be determined by the ultimate fact-finder. Because a reasonable juror could conclude this is direct evidence of constructive knowledge, this evidence is sufficient to raise a genuine dispute of material fact whether Plaintiffs can proceed past the "no report, no recovery" hurdle and would allow the jury to determine whether AT&T was armed with knowledge that RMRs worked overtime, even though these employees did not report the overtime, to trigger the "if you see it, you must pay it" rule. *See Fairchild*, 815 F.3d at 964; *Mosley Lovings*, 2020 WL 6865785, at *3-*4. This evidence does not satisfy Plaintiffs' burden to warrant summary judgment in their favor as a matter of law.

In this case, Plaintiffs submit deposition testimony from witnesses in other similar cases against AT&T. Those depositions include the Staten and Quirogo depositions from the *Harrington* case. AT&T objects to use of several depositions, including those of Staten and Quirogo, as inadmissible because the witnesses do not have personal knowledge of the AT&T DFW call center. Plaintiffs respond that depositions from other litigation are generally admissible, but they do not address the relevancy objection.

Federal Rule of Civil Procedure 602 requires evidence to be based on personal knowledge. Evidence that other employees may not have been paid for overtime

worked is not relevant to and does not support a claim that the employer knew the specific plaintiff was working unpaid overtime. *See Uhler v. Galesi Mgmt. Corp.*, No. 3:98-cv-5-L, 1999 WL 20949, at *6 (N.D. Tex. Jan. 8, 1999); *see also Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40-bbc, 2013 WL 3777251, at *10 (W.D. Wis. July 19, 2013) (citing *Uhler* and holding general evidence that employees other than plaintiff were not paid for overtime work was insufficient to create genuine factual dispute whether employer knew plaintiff was not paid for overtime work).

Although the Staten and Quiroga deposition testimony was relevant in *Harrington*, it is not relevant in this case. Staten repeatedly testified that his knowledge was limited to the San Antonio call center. *See* Dkt. No. 54-6, Ex. L, at p. 19 ll. 3-5 ("Only center I can speak for is San Antonio. I don't know how they were recording time when they were Dallas"), p. 48, l. 24 – p. 49 l. 1 ("I can only speak for San Antonio. I can't speak for AT&T as a whole."), p. 70 ll. 2-3 ("I can't speak for other groups. I only can speak for the San Antonio group."). And even though Staten had previously worked at the DFW call center, he had been at the San Antonio call center for the last seven years, which includes the relevant time period for this case. *See id.* at p. 9 ll. 5-8, p.132 ll. 7-13. Quiroga also worked at the San Antonio call center. He occasionally monitored the DFW bankruptcy work group, but he did not monitor the DFW credit and collections group. *See* Dkt. No. 54-18, Ex. L, at p. 11 l. 16 – p. 13 l. 14.

Plaintiffs also reference, but do not discuss, the deposition testimony of Jody

Garcia, and AT&T objects to his testimony because he does not have personal knowledge of the DFW call center. Garcia oversaw call centers that provided services to customers in languages of than English and did not oversee the DFW call center. *See* Dkt. No. 54-17, Ex. J., at p. 14 l. 16 – p. 15 l. 22.

Because Plaintiffs have not met their burden to show that Staten, Quiroga, or Garcia had personal knowledge of the DFW call center, the undersigned recommends that the Court grant AT&T's objections as to these witnesses and find their testimony inadmissible as summary judgment evidence in this case. The undersigned recommends that the Court deny the remaining objections as moot because they go to evidence that is unnecessary to disposition of the summary judgment motions.

And, because Plaintiffs have not directed the Court to, and the undersigned is not aware of, any other evidence that would create a genuine dispute of material fact as to whether AT&T had actual or constructive notice that the RMRs in the DFW call center were working call time after their shift ended but not being paid for that work, the undersigned recommends that the Court grant AT&T's motion for summary judgment and deny Plaintiffs' motion for partial summary judgment on the FLSA overtime claim.

III.    Plaintiffs' Unreported Call Time is not de minimus.

AT&T seeks summary judgment on an independent theory, arguing that, even if the Court accepts Plaintiffs' arguments as true, the summary judgment evidence

reveals that the alleged Unreported Call Time for each Plaintiff that supports this cause of action is *de minimis* and that the FLSA does not require compensation for *de minimis* overtime. For this reason, AT&T contends that it is entitled to summary judgment as a matter of law.

The Federal Regulations interpreting the FLSA create what courts construe as "the *de minimis* doctrine":

> In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)). This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

29 C.F.R. § 785.47. Courts consider four factors to determine whether alleged unpaid work time is *de minimis* as a matter of law: "(1) the amount of daily time spent on the additional work; (2) the administrative difficulty in recording the time; (3) the size of the aggregate claim; and (4) the regularity of the work." *Prince v. MND Hosp., Inc.*, CIV A H-08-2617, 2009 WL 2170042, at *12 (S.D. Tex. July 20, 2009)(quoting *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556, 564 (E.D. Tex. 2001) (citation omitted)).

Under these undisputed facts, AT&T's argument must fail by the terms of the *de minimis* doctrine as stated in the Federal Regulation. In particular, AT&T cannot

establish the second factor of the court-established test.

First, the undisputed facts reveal that the Unreported Call Time, that is, the time that Plaintiffs worked in excess of their scheduled working hours, can be "precisely recorded for payroll purposes." The basis of AT&T's defense in this action is its failure to pay Plaintiffs for the Unreported Call Time is due to Plaintiffs' failure to self-report the overtime. But AT&T admits that the Unreported Call Time can be precisely recorded for payroll purposes. Next, the undisputed facts reveal that the Unreported Call Time in dispute is not "uncertain and indefinite" and AT&T's failure to pay Plaintiffs for such time is not "due to considerations justified by industrial realities." Rather, the time that RMRs allege they spent on Unreported Call Time is certain and definite, and the Unreported Call Time was not incidental or justified by industrial realities, but rather was required as part of RMRs' assigned work duties. Finally, the undisputed facts reveal that the Unreported Call Time for which Plaintiffs seek overtime pay is "fixed or regular working time or practically ascertainable period of time" for which AT&T "regularly required [the RMRs] to spend on duties assigned to [them]." Consequently, under the terms of the *de minimis* doctrine, AT&T "may not arbitrarily fail to count as hours worked any part, however small, of the [RMRs'] fixed or regular working time or practically ascertainable period of time [they were] regularly required to spend on duties assigned to [them]." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415-1416 (5th Cir. 1990), abrogated on other grounds by *Integrity Staffing Sols., Inc. v. Buske*, 574 U.S.

27 (2014), *superseded by statute on other grounds as stated in Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 227-28 (5th Cir. 2017).

Accordingly, based on the undisputed facts, the Court finds that AT&T cannot establish Plaintiffs' Unreported Call Time for which they seek overtime pay under the FLSA was *de minimis* as a matter of law. Therefore, AT&T's motion for summary judgment on this basis must fail. *See* 29 C.F.R. § 785.47.

## Recommendation

The Court should grant Defendants' Motion for Summary Judgment [Dkt. No. 45], deny Plaintiffs' Motion for Summary Judgment [Dkt. No. 53], and should sustain Defendants' objections to the deposition testimony of Eric Staten, Roel Quiroga and Jody Garcia, and should deny as moot the remaining objections.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party

from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 8, 2022

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-26-